UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DELAWARE NORTH COMPANIES, INC. – BOSTON, <br><br> Plaintiff, <br><br> v. <br><br> COMMONWEALTH FARM 1761, INC. d/b/a THE BOSTON GARDEN DISPENSARY, <br><br> Defendant. | C.A. No. <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Delaware North Companies, Inc. – Boston ("DNCB"), for its complaint against Defendant, Commonwealth Farm 1761, Inc. d/b/a The Boston Garden Dispensary ("TBG" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1. This action arises out of TBG's knowing and intentional unauthorized use of DNCB's iconic BOSTON GARDEN trademark. More particularly, this is an action for federal trademark infringement, unfair competition, trademark dilution, cybersquatting, cancellation of TBG's trademark registration, and related state and common law causes of action.

## PARTIES

2. Plaintiff DNCB is a Delaware corporation with its principal place of business located at 100 Legends Way, Boston, Massachusetts 02114.

3. On information and belief, Defendant TBG is a Massachusetts corporation with its principal place of business located at 8 Corinne Parkway, Middleboro, Massachusetts 02346.

**JURISDICTION AND VENUE**

4. This action arises under the Lanham Act, 15 U.S.C. §§ 1114, 1119, 1125(a), 1125(c), and 1125(d), and related Massachusetts law, including Mass. Gen. Laws ch. 110H and 93A. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over TBG because it is incorporated in and has its principal place of business in the Commonwealth of Massachusetts, transacts business in this judicial district, and has committed tortious acts (including infringement and dilution of DNCB's BOSTON GARDEN trademark) within this judicial district.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because TBG is subject to personal jurisdiction within this judicial district and a substantial part of the events and injury giving rise to DNCB's claims is occurring within this judicial district.

**FACTS**

**DNCB's BOSTON GARDEN Trademark**

7. For more than 90 years, and since many decades prior to the acts of TBG complained of herein, the BOSTON GARDEN name and trademark has identified Boston's storied arena and the high-quality goods and services associated with it. The iconic arena located at 100 Legends Way is home to the NHL's Boston Bruins and NBA's Boston Celtics, and tens of millions of people have attended events there. The arena has hosted numerous famous entertainers, musicians, and political figures, and has been prominently featured in popular culture, appearing in films like *The Town* and *Ted*. Additionally, the arena has hosted several championship finals games, including the NBA Finals and the Stanley Cup Finals.

8. Through longstanding and extensive use, the BOSTON GARDEN mark has become widely known and famous throughout the United States in connection with Boston's premiere sports arena, which DNCB has owned and operated for decades.

9. As a consequence of DNCB's continuous use of the BOSTON GARDEN mark in connection with various arena-related offerings since at least as early as 1990, the mark has become closely associated with DNCB, and has acquired particular significance as an identifier of DNCB's high-quality goods and services. As such, DNCB has developed substantial, valuable goodwill in connection with the BOSTON GARDEN mark.

10. DNCB is the owner of U.S. Trademark Registration Nos. 7,507,837; 6,623,366; and 1,595,311 for the BOSTON GARDEN mark. All those registrations (copies of which are attached hereto as Exhibit A) are in full force and effect. Further, the use of the BOSTON GARDEN mark as evidenced by Reg. No. 1,595,311 is incontestable, and that registration serves as conclusive evidence of DNCB's exclusive rights in the mark.

11. DNCB's operations in connection with the BOSTON GARDEN mark encompass a wide array of consumer-facing goods and services that extend to BOSTON GARDEN-branded apparel, accessories, memorabilia, and home goods, along with diverse food and beverage offerings, event hosting services, and premium hospitality experiences. DNCB's robust e-commerce and brick-and-mortar channels establish a substantial consumer retail footprint and demonstrate DNCB's natural zone of expansion into various lifestyle and branded retail categories commonly associated with major sports and entertainment properties.

**TBG's Unlawful Conduct**

12. Notwithstanding DNCB's well known prior rights in the BOSTON GARDEN mark, TBG has adopted and is using THE BOSTON GARDEN and variations thereof for cannabis-related goods and services in Massachusetts (collectively, the "Infringing Mark"). TBG operates cannabis

3

dispensaries in Athol, Cambridge, and Somerville under the Infringing Mark, and applied for and/or owns several federal trademark registrations for the Infringing Mark in connection with cannabis-related smoking accessories and website and retail services—specifically, U.S. Reg. No. 7,075,795 and Ser. Nos. 97/076,871 and 90/328,729.  The Infringing Mark incorporates DNCB's distinctive and famous BOSTON GARDEN mark in its entirety.

13. TBG also registered and is using the domain name <boston.garden> (the "Infringing Domain") without DNCB's authorization.  The Infringing Domain is identical to DNCB's distinctive and famous BOSTON GARDEN mark.

14. Because TBG's Infringing Mark fully incorporates, and TBG's Infringing Domain is identical to, DNCB's BOSTON GARDEN mark, members of the public are likely to be confused as to the source, sponsorship, or other commercial affiliation of TBG's goods and services.

15. DNCB's extensive marketplace, as alleged above, reaches the same general consumer population targeted by TBG's retail operations.  Consumers are accustomed to encountering a wide range of goods and services emanating from, sponsored by, or affiliated with DNCB across retail, entertainment, and hospitality channels.  Given the fame and goodwill associated with the BOSTON GARDEN mark, TBG's use of the Infringing Mark for cannabis-related retail services and products is likely to lead consumers to presume a license, sponsorship, and/or other commercial affiliation with DNCB.

16. TBG's use of the Infringing Mark and Infringing Domain creates a false impression that DNCB licensed or sponsors TBG's activities, or that TBG is affiliated with DNCB, which it is not.  Confusion as to source, sponsorship, or affiliation is actionable under federal and Massachusetts law even where the parties' goods and services are not identical.

17. TBG's use of the Infringing Mark and Infringing Domain also dilutes DNCB's distinctive and famous BOSTON GARDEN mark by diminishing the public's association of said mark with DNCB's goods and services, and/or by threatening to harm said mark's reputation.

18. The activities of TBG complained of herein constitute infringement and dilution of DNCB's proprietary rights in the BOSTON GARDEN mark and have continued in spite of TBG's knowledge that the use of said mark, or any colorable imitation thereof, was and remains in direct contravention of the exclusive proprietary rights of DNCB.

19. DNCB has notified TBG of its infringement and dilution and demanded cessation of use of the Infringing Mark and transfer of the Infringing Domain. TBG has failed to comply and continues its use of the Infringing Mark to date. TBG's continued infringement and dilution of the BOSTON GARDEN mark is willful.

20. TBG's unlawful activity results in irreparable harm and injury to DNCB in that, among other things, it is likely to deceive and confuse the public as to the origin and sponsorship of goods and services offered in connection with the BOSTON GARDEN mark; wrongfully appropriates the substantial goodwill DNCB has developed and maintained in said mark; and threatens to harm and injure the reputation and/or unique associations of said mark.

## COUNT I
### Federal Trademark Infringement
### (Violation of 15 U.S.C. § 1114, *et seq.*)

21. DNCB incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

22. DNCB is the owner of federal trademark registrations for the BOSTON GARDEN mark in connection with, *inter alia*, retail services, restaurant services, provision of an entertainment facility, and sport clothing.

23. Defendant's use in commerce of a colorable imitation of the federally registered BOSTON GARDEN mark in connection with cannabis-related goods and services has infringed and continues to infringe DNCB's rights in the BOSTON GARDEN mark so as to create a likelihood of confusion, or to cause mistake, or to deceive the public as to the nature, source and sponsorship of Defendant's goods and services.

24. The unauthorized acts of Defendant as alleged above constitute infringement of DNCB's federally registered trademark(s) in violation of the Lanham Act, 15 U.S.C. § 1114 *et seq.*, to the substantial and irreparable injury of the public and DNCB's business reputation and goodwill.

25. The unauthorized acts of Defendant as alleged above were commenced and continue in spite of Defendant's actual and/or constructive knowledge of DNCB's rights in the BOSTON GARDEN mark and in spite of Defendant's knowledge that such activity was and is in direct contravention of DNCB's rights.

26. The aforesaid acts of Defendant have injured DNCB in an amount to be determined at trial.

27. The aforesaid acts of Defendant have also caused irreparable harm to DNCB and, unless enjoined by this Court, will continue to cause irreparable damage, loss and injury to DNCB, for which DNCB has no adequate remedy at law.

## COUNT II
### Federal Unfair Competition and False Designation of Origin
### (Violation of 15 U.S.C. § 1125(a)(1)(A))

28. DNCB incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

29. DNCB has acquired proprietary rights in the BOSTON GARDEN mark as a trademark and service mark for retail services, restaurant services, provision of an entertainment facility, sport clothing, and other arena-related goods and services.

6

30. Defendant's use in commerce of a colorable imitation of DNCB's BOSTON GARDEN mark in connection with cannabis-related goods and services as alleged herein constitutes the use in commerce of a false designation of origin in connection with Defendant's goods and/or services.

31. The aforesaid acts of Defendant are likely to cause confusion, mistake, or deception as to the affiliation, connection or association of Defendant with DNCB, or as to the origin, sponsorship or approval of Defendant's goods, services, or other commercial activities by DNCB.

32. The aforesaid acts of Defendant have caused irreparable harm to DNCB and, unless enjoined by this Court, will continue to cause irreparable damage, loss and injury to DNCB, for which DNCB has no adequate remedy at law.

## COUNT III
## Federal Trademark Dilution
## (Violation of 15 U.S.C. § 1125(c))

33. DNCB incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

34. DNCB's BOSTON GARDEN mark is a famous trademark under 15 U.S.C. § 1125(c)(2)(A), in that it is widely recognized by the general public of the United States as a designation for the Boston arena operated by DNCB and DNCB's goods and services associated therewith. The BOSTON GARDEN mark became famous long prior to Defendant's unlawful use of its colorable imitations thereof, as alleged herein.

35. Defendant's use in commerce of colorable imitations of the BOSTON GARDEN mark in connection with Defendant's cannabis-related goods and services is likely to dilute DNCB's famous BOSTON GARDEN mark, in violation of 15 U.S.C. § 1125(c), by lessening the capacity of the BOSTON GARDEN mark to identify and distinguish DNCB as the source of goods and services bearing or provided under the famous BOSTON GARDEN mark and by harming the reputation and goodwill of the famous BOSTON GARDEN mark.

36. Defendant's unauthorized use in commerce of colorable imitations of the BOSTON GARDEN mark in connection with Defendant's cannabis-related goods and services is intended and has the effect of trading on the reputation of and causing dilution of the famous BOSTON GARDEN mark.

37. Defendant's trademark dilution as herein alleged has injured and will continue to injure DNCB in that DNCB has suffered and will continue to suffer damage to its reputation and goodwill as a direct and proximate result of Defendant's illegal conduct, unless such unlawful conduct is enjoined by this Court.

38. DNCB is entitled to recover all damages sustained as a result of Defendant's actions and all profits realized by Defendant through its unlawful use of colorable imitations of DNCB's BOSTON GARDEN mark.

39. Defendant's actions have been willful and deliberate, entitling DNCB to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendant.

## COUNT IV
### Cybersquatting
### (Violation of 15 U.S.C. § 1125(d))

40. DNCB incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

41. DNCB has acquired proprietary rights in the BOSTON GARDEN mark as a trademark and service mark and owns federal trademark registrations for the BOSTON GARDEN mark in connection with, *inter alia*, retail services, restaurant services, provision of an entertainment facility, and sport clothing.

42. DNCB's BOSTON GARDEN mark is distinctive and/or famous, and it became distinctive and/or famous well before Defendant's registration and use of the Infringing Domain.

43. Defendant's Infringing Domain is identical to DNCB's BOSTON GARDEN mark.

44. Defendant's Infringing Domain is dilutive of DNCB's famous BOSTON GARDEN mark.

45. Defendant registered and used the Infringing Domain with a bad faith intent to profit from DNCB's BOSTON GARDEN mark.

46. Defendant's continued use of the Infringing Domain after DNCB provided written notice of infringement and dilution evidences willfulness and bad faith.

47. The aforesaid acts of Defendant have caused irreparable harm to DNCB and, unless enjoined by this Court, will continue to cause irreparable damage, loss and injury to DNCB, for which DNCB has no adequate remedy at law.

## COUNT V
### Massachusetts Statutory Dilution
### (Violation of Mass. Gen. Laws ch. 110H)

48. DNCB incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

49. DNCB's BOSTON GARDEN mark is valid at common law, and it became distinctive among the consuming public well before Defendant's unlawful use of a similar mark, as alleged herein.

50. Defendant's use of the Infringing Mark as alleged herein has created the likelihood of dilution of the distinctive quality of DNCB's BOSTON GARDEN mark, and/or the likelihood of injury to DNCB's business reputation, in violation of DNCB's rights under Massachusetts law.

51. The aforesaid acts of Defendant have caused irreparable harm to DNCB and, unless enjoined by this Court, will continue to cause irreparable damage, loss and injury to DNCB, for which DNCB has no adequate remedy at law. DNCB requests injunctive relief under Mass. Gen. Laws ch. 110H, § 13.

## COUNT VI
## Common Law Unfair Competition

52. DNCB incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

53. Defendant's aforesaid acts are a violation and in derogation of DNCB's common law rights and are likely to cause confusion, mistake and deception among consumers and the public as to the source, origin, sponsorship or quality of Defendant's goods and services.

54. Defendant's aforesaid acts are causing loss, damage and injury to DNCB and to consumers and the public.

55. Defendant knows, or reasonably should know, that its conduct is likely to mislead the public.

56. Defendant's aforesaid acts have been knowing, deliberate, willful, intended to cause mistake or to deceive, and in disregard of DNCB's rights.

57. The aforesaid acts of Defendant have damaged DNCB in an amount to be determined at trial.

58. The aforesaid acts of Defendant have also caused irreparable harm to DNCB and, unless enjoined by this Court, will continue to cause irreparable damage, loss and injury to DNCB, for which DNCB has no adequate remedy at law.

## COUNT VII
## Violation of Mass. Gen. L. ch. 93A – Unfair and Deceptive Trade Practices

59. DNCB incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

60. Defendant, in the course of trade or commerce, has engaged in unfair methods of competition and unfair or deceptive acts or practices in violation of Massachusetts General Laws Chapter 93A, §§ 2 and 11, by, among other things, intentionally and willfully infringing upon DNCB's

10

trademarks, misrepresenting the origin and authenticity of goods, and passing off infringing goods as those of DNCB.

61. Defendant's conduct, as described above, was undertaken in knowing disregard of DNCB's rights and with the intent to deceive consumers and unfairly benefit from DNCB's reputation and goodwill.

62. As a direct and proximate result of Defendant's unfair and deceptive acts and practices, DNCB has suffered and continues to suffer substantial injury.

63. Defendant's actions constitute willful and knowing violations of Chapter 93A, entitling DNCB to multiple damages, attorneys' fees, and costs pursuant to M.G.L. c. 93A, § 11.

## COUNT VII
### Cancellation of U.S. Trademark Registration No. 7,075,795
### (Pursuant to 15 U.S.C. § 1119)

64. DNCB incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

65. The continued registration of Defendant's THE BOSTON GARDEN mark (Reg. No. 7,075,795) and use of said Infringing Mark by Defendant is likely to cause harm to DNCB.

66. Defendant's registration of the Infringing Mark was effected without the consent of DNCB and in violation of DNCB's prior and superior rights in the BOSTON GARDEN mark.

67. Defendant's registration and use of the Infringing Mark falsely suggests a connection with DNCB, is likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, or approval of Defendant's goods and services, and dilutes DNCB's famous BOSTON GARDEN mark.

68. Defendant's use and registration of the Infringing Mark is damaging DNCB's business and reputation and will continue to cause damage to DNCB unless Defendant's registration is cancelled.

69. DNCB is entitled to cancellation of Defendant's U.S. Trademark Reg. No. 7,075,795 pursuant to 15 U.S.C. § 1119.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Delaware North Companies, Inc., and against Defendant and grant the following relief:

A.     Preliminary and permanent injunctions barring Defendant and its officers, agents, servants, employees, and all persons acting in concert with Defendant from any use of the designation, BOSTON GARDEN, or any other name or mark confusingly similar to DNCB's BOSTON GARDEN mark either alone or in combination with other words or symbols, as a part of any trademark, service mark, trade name, corporate name, assumed name, domain name, web site, email address, or in any other manner;

B.     Preliminary and permanent injunctions requiring Defendant to remove all use of designations infringing and/or dilutive of DNCB's BOSTON GARDEN mark from its website, sales aids, advertisements, and any other promotional material or medium;

C.     An order requiring Defendant to deliver up for destruction all literature, signs, prints, advertising materials, catalogues, stationery and any other item bearing any colorable imitation of DNCB's BOSTON GARDEN mark, either alone or in combination with other words or symbols, that is published, even if not disseminated publicly, for promoting Defendant's goods and/or services, pursuant to 15 U.S.C. § 1118;

D.     An injunction pursuant to 15 U.S.C. § 1116 requiring Defendant to expressly abandon U.S. Trademark Application Serial Nos. 97/076,871 and 90/328,729, and enjoining Defendant and all persons acting in concert with it from filing or prosecuting any application for BOSTON GARDEN or any confusingly similar designation;

E.     An order directing the United States Patent and Trademark Office to cancel U.S. Trademark Registration No. 7,075,795, pursuant to 15 U.S.C. § 1119, and to take such actions as are

necessary and appropriate to ensure that U.S. Trademark Application Serial Nos. 97/076,871 and 90/328,729 do not proceed to registration;

F. An accounting for all profits derived by Defendant and its affiliates attributable to its infringement, unfair competition, dilution, and/or cybersquatting;

G. An award of monetary damages in an amount sufficient to compensate DNCB for losses it has sustained as a consequence of Defendant's unlawful acts, as well as Defendant's profits attributable to its unlawful acts, infringement, unfair competition, and/or dilution;

H. An award of actual damages and profits attributable to Defendant's cybersquatting or, at Plaintiff's election, statutory damages pursuant to 15 U.S.C. § 1117(d);

I. A trebling of any and all relevant damages awarded, pursuant to 15 U.S.C. § 1117(a) and/or Mass. Gen. Laws ch. 93A;

J. An award of DNCB's attorneys' fees and costs, pursuant to 15 U.S.C. § 1117(a) and/or Mass. Gen. Laws ch. 93A;

K. An award of prejudgment and post-judgment interest as permitted by law; and

L. Such other and further relief that the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

DNCB hereby demands a trial by jury on all issues so triable in this action.

Respectfully submitted,

DELAWARE NORTH COMPANIES, INC. – BOSTON

By Its Attorneys,

*/s/ Christine K. Bush*
Craig M. Scott, Esq. (#556210)
Christine K. Bush, Esq. (#635381)
Elizabeth M. Nagle, Esq. (#696775)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109-1775
(617) 378-4208 Phone
(617) 345-9020 Fax
cscott@hinckleyallen.com
cbush@hinckleyallen.com
lnagle@hinckleyallen.com

Dated: February 18, 2026